UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WILLIAM H. BOOTH                                                                                          PLAINTIFF

v.                                                                                   CIVIL ACTION NO. 3:05CV-526-S

LIFE INSURANCE COMPANY                                                                                 DEFENDANT
OF NORTH AMERICA

### MEMORANDUM OPINION

This matter is before the Court upon our order of November 21, 2005, requesting briefs on the application of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, to the insurance policy at issue in the case *sub judice*. For the reasons set forth herein we conclude that ERISA is applicable.

### BACKGROUND

The plaintiff, William H. Booth, was married to Delores M. Thomas-Booth ("Delores"). On June 16, 2004, while operating a vehicle under the influence of alcohol, Delores was killed in a single vehicle accident in Louisville, Kentucky. Prior to her death, Delores was employed by Seven Counties Services, Inc. ("Seven Counties"), and by virtue of that employment, Delores purchased personal accident insurance (the "Plan") from the defendant, Life Insurance Company of North America, a subsidiary of CIGNA.

Seven Counties makes the Plan available to all its employees as a part of its benefits package. At some point after Seven Counties procured the Plan, it advertised the Plan in a meeting with its new employees and provided those employees with a four page informational brochure (the "Brochure") regarding the Plan. It appears that CIGNA created the Brochure but placed at the top of its front page Seven Counties' name and logo, which is preceded by the bold title and phrase: "Personal Accident Insurance Developed for the Employees of . . . ." Immediately beneath Seven

Counties' name and logo is the bold heading: "Who Needs Personal Accident Insurance?", which is followed below by the words: "You do." Seven Counties' name also appears on the Brochure's enrollment form where Seven Counties is named as the policyholder. The enrollment form is located on the penultimate page. CIGNA's name and logo also appear on the enrollment form, as well as on the last page under a section instructing how one can sign up for the Plan. However, CIGNA's name and logo are printed in a font that is smaller than the majority of the font in the rest of the Brochure and significantly smaller than Seven Counties' name and logo.

Seven Counties' employees can sign up for the Plan after having been employed with Seven Counties for 60 days. The Plan's premiums are deducted by Seven Counties from its employees' paychecks. Although Seven Counties is not involved in investigating or deciding payment of insureds' claims, it provides the claim forms to its employees and their beneficiaries, helps them fill out the forms, and submits the completed forms to CIGNA. Such was the case with Booth when he asked Seven Counties' human resources department about making a claim on Delores' policy.

CIGNA ultimately denied Booth's claim, explaining that Delores' death did not constitute an "accident" under the terms and conditions of the policy due to her intoxication. After Booth appealed and was again denied, he brought this action against CIGNA seeking a declaratory judgment on his entitlement to benefits, as well as other relief. The applicability of ERISA is an important issue, because to the extent Booth sets forth a claim for breach of contract, extra-contractual damages, bad faith, fraud or unfair claims settlement practices, said claims may be pre-empted by ERISA, thereby potentially limiting the relief to which Booth might otherwise be entitled under state law.

**ANALYSIS**

An ERISA "employee welfare benefit plan" is "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits,

or benefits in the event of sickness, accident, disability, death, or unemployment . . . ." 29 U.S.C. § 1002. A three-prong test is applied to determine whether a benefit plan satisfies this definition:

> (1) Is the plan exempt from ERISA under the Department of Labor's safe-harbor regulations?
>
> (2) From the surrounding circumstances could a reasonable person ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits?
>
> (3) Did the employer establish or maintain the plan with the intent of providing benefits to its employees?

*Thompson v. American Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996).

Of these prongs, the only one the parties dispute is (1): whether the Plan falls within the safe-harbor.[1]

In order for a plan to fall within the safe-harbor and be exempt from ERISA, each of the following must apply:

> (1) No contributions are made by the employer;
>
> (2) Employee participation in the program is completely voluntary;
>
> (3) The employer's sole functions are, without endorsing the plan, to permit the insurer to publicize the policy to employees, to collect premiums through payroll deductions and remit them to the insurer; and
>
> (4) The employer receives no consideration in connection with the program other than reasonable compensation for the administration of services actually rendered in connection with payroll deductions.

29 C.F.R. 2510.3-1(j).

Our inquiry will focus only on (3), since the parties maintain that their dispute is limited to whether Seven Counties endorsed the Plan.

---

[1] Booth, who argues against ERISA applicability and in whose interest it would be to dispute the applicability of prongs (2) and (3), has submitted that of the three prongs, "the only item at issue here is whether the plan falls under the 'safe-harbor' regulation of the Department of Labor." Based on Booth's statement, as well as the facts of the case, we proceed on the basis that prongs (2) and (3) are satisfied.

In *Thompson v. American Home Assurance Co.*, 95 F.3d 429 (6th Cir. 1996), the Sixth Circuit adopted the standard for employer conduct to constitute endorsement. In order for an employer to have endorsed a plan it must have done more than merely recommend the plan to its employees - it must have engaged in substantial conduct "that offends the ideal of employer neutrality and brings ERISA into the picture." *Id.* at 436 (quoting *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1136 (1st Cir. 1995)). Such conduct is measured objectively, with the focus placed on whether an employee "could reasonably conclude that the employer had endorsed the policy based on . . . [his] observation of the employer's activities in connection with the plan." *Id.* (quoting *Johnson*, 63 F.3d at 1134, 1137 n.6).

*Thompson* set forth several factors for courts to use in determining whether an employer behaved neutrally towards a plan.

> (1) Has the employer played an active role in either determining which employees will be eligible for coverage or in negotiating the terms of the policy or the benefits thereunder?
>
> (2) Is the employer named as the plan administrator?
>
> (3) Has the employer provided a plan description that specifically refers to ERISA or that the plan is governed by ERISA?
>
> (4) Has the employer provided any materials to its employees suggesting that it has endorsed the plan?
>
> (5) Does the employer participate in processing claims?

*Thompson*, 95 F.3d at 437. A finding of endorsement may be appropriate upon an affirmative response to one or more of these factors. *See id.*

Although factors (1)-(3) are inapplicable to Seven Counties, factors (4) and (5) are. The Brochure prominently displays Seven Counties' name and logo, and although the mere inclusion of an employer's logo on an informational brochure may not rise to the level of endorsement, the placement and size of the logo, as well as the words surrounding the logo, can lead to a finding of

endorsement. Here, the bold heading and words, "Who Needs Personal Accident Insurance? You do.", found immediately below Seven Counties' name and logo is highly suggestive of Seven Counties endorsing the Plan. Meanwhile, CIGNA's name and logo do not appear until the last two pages of the Brochure, and then only in font smaller than the rest of the Brochure. This fails to counter-act the appearance of endorsement created by the placement and size of Seven Counties' name and logo.

Seven Counties also participates in the processing of claims. Seven Counties provides claim forms to its employees and their beneficiaries, helps them fill out the forms, and then submits the completed forms on their behalf to CIGNA. Booth argues that these are permissible administrative functions and in support of this argument cites *Johnson v. Watts Regulator Co.*, the First Circuit case setting forth the endorsement standard adopted by the Sixth Circuit in *Thompson*. *See Johnson*, 63 F.3d 1129. However, he is incorrect when he asserts that the court in *Johnson*, "held that an employer is not endorsing the plan by assisting an employee with the application of benefits." The employer in *Johnson* provided its employees with claim forms, but it did nothing more. *Id.* at 1136. Here, Seven Counties does more than simply make the forms available to its employees - by assisting with the forms' completion and submitting the forms to CIGNA it actively participates in their processing.

In addition to satisfying two *Thompson* factors, Seven Counties is listed as the Plan's policyholder, making each employee participant an additional insured underneath the Plan, instead of a separate insured.[2] This indicates Seven Counties' approval, or endorsement, of the Plan. Furthermore, the enthusiasm with which Seven Counties advertised the plan went beyond mere recommendation. Seven Counties did not simply hand out informational brochures that advised employees about the Plan's availability; it held a meeting in which it gave a PowerPoint presentation

---

[2]Because the Sixth Circuit has not mandated that the *Thompson* factors be exclusive, we also consider facts specific to the case at hand in deciding whether Seven Counties' actions were consistent with employer neutrality.

about the Plan. Such involvement demonstrates a strong connection between Seven Counties and the Plan, to the point where it appears that Seven Counties endorsed the Plan.

These actions are inconsistent with employer neutrality, and when viewed from the perspective of an objective employee, the only reasonable conclusion is that Seven Counties endorsed the Plan. As such, the Plan fails in meeting the safe-harbor criteria, making ERISA applicable.